UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

       v.                                 Case No. 19-CR-151

FRANCISCO MARTINEZ,

        Defendant.

---

## ORDER DENYING MOTION TO SUPPRESS

---

Defendant Francisco Martinez, with eight others, is charged in a superseding indictment with conspiracy to distribute and possess with intent to distribute heroin, fentanyl, cocaine (powder and crack), methamphetamine, and marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Martinez's case is before the court on motions to suppress all evidence obtained as a result of searches performed during two separate traffic stops of the vehicles he was driving, the first in Arizona and the second in Wisconsin. Martinez contends that the State Trooper who pulled him over in Arizona violated his rights under the Fourth Amendment by unreasonably prolonging the traffic stop and conducting a search of his vehicle without a warrant. As to the stop in Wisconsin, Martinez contends that the State Trooper violated his Fourth Amendment rights by pulling him over without a reasonable suspicion that he had violated the law and then unreasonably prolonging the stop to allow police to walk a drug detection dog around his car. The court conducted an evidentiary hearing on the motions on September 4, 2020, and the parties submitted post-hearing briefs. For the reasons that follow, Martinez's motions will be denied.

### A. Arizona Stop

On January 30, 2019, at approximately 4:15 p.m., Arizona State Trooper Thomas Callister performed a traffic stop on the Dodge SUV Martinez was driving on Interstate Highway 15. Trooper Callister pulled Martinez over because he observed a large GPS and Radar Detector apparatus that was obscuring the driver's view of the roadway in violation of the Arizona traffic code. As shown by the audio/video recording of the stop, Trooper Callister immediately made contact with Martinez, who identified himself with an Illinois driver's license, and explained why he had stopped him. Trooper Callister testified that Martinez appeared very nervous; his hand was shaking as he handed Trooper Callister his driver's license. Martinez said that the vehicle was registered to his brother-in-law and he was on his way to California to visit some cousins. Trooper Callister explained that he intended to give Martinez a written warning for the violation and asked him to have a seat in his squad car while he completed the paperwork. Martinez complied.

Once seated in the squad car, Trooper Callister obtained the information needed to write the warning. He also checked for any warrants. He completed the warning within about ten minutes. Trooper Callister then asked Martinez if he had anything illegal in the car. Martinez responded that he did not. Trooper Callister asked whether there was any cash in the car, and Martinez said he had approximately $2,000 in cash. Trooper Callister explained in his testimony that he asked these questions because he suspected that Martinez might be transporting money or drugs based on a number of different factors.

First, Trooper Callister testified that this section of Interstate Highway 15 was a known drug corridor. He had been patrolling the area since 2008 and had conducted hundreds of drug interdictions. Martinez's behavior and statements, based on his experience, were indicative of someone transporting money or drugs. For example, Martinez told Trooper Callister that he

2

generally travels to California once a year or every other year. Yet, he said he was traveling by himself on a vacation from Illinois to California (a 30-plus-hour trip) to visit his cousins, but said he intended to return to Illinois and would be driving back in a few weeks with his family to attend a nephew's birthday party. The fact that he was carrying some $2,000 in cash also struck Trooper Callister as unusual and suggestive of drug activity. He was also driving a car he did not own, which was common among drug traffickers, and he gave inconsistent statements about whether the owner was his brother-in-law or his stepbrother. Finally, Trooper Callister testified that Martinez seemed unusually nervous.

In any event, Trooper Callister then asked Martinez if he could search the vehicle. Martinez at first said yes, but then as he was filling out the consent form, noticed that it said he could refuse. He asked Trooper Callister if he could refuse, and Trooper Callister assured him he could. Martinez then stated he did not want to consent to a search. Trooper Callister asked if he minded if they ran a dog around the outside of his vehicle. Martinez agreed that would be fine, but when told it could take as long as a half hour to get a dog there, Martinez said he didn't want to wait that long and agreed to allow Trooper Callister to perform a search instead. Trooper Callister asked Martinez if he was sure, and he responded yes. In the course of the search that followed, Trooper Callister located a hidden compartment in the back of the SUV where the spare tire would normally be kept. Inside the compartment, he found $77,745.

Martinez does not challenge Trooper Callister's decision to conduct a traffic stop of his vehicle. The evidence presented shows that Martinez had positioned his GPS device on his front windshield so as to obscure his view of the roadway. Martinez does not deny that obstructing his vision in this way is a violation of the Arizona traffic code. Instead, Martinez argues that Trooper Callister violated the Fourth Amendment by unreasonably prolonging the stop beyond the time

needed to complete the warning. In support of his argument, Martinez relies on the Supreme Court's decision in *Rodriguez v. United States*, 575 U.S. 348 (2015). There the court held that police may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id*. at 350.

Here, however, Trooper Callister did not prolong Martinez's traffic stop to conduct a dog sniff. He asked Martinez if he would consent to a dog sniff. Martinez gave his consent, but changed his mind when Trooper Callister told him it could take up to a half hour for the dog to arrive. At that point, Martinez agreed to allow Trooper Callister to conduct a search. He clearly knew he was under no obligation to consent to a search. He had already read the form advising him of his right to refuse, and Trooper Callister confirmed that he could refuse. Martinez argues that the stop continued for almost 30 minutes before the discovery of incriminating evidence and his arrest. But this argument ignores the fact that Martinez consented to the search almost immediately after the work was completed for the warning. Unlike *Rodriguez*, this was not a case where the officer completed the processing required for the traffic violation and then ordered the driver to remain at the scene, over his objection, while a drug detection dog was walked around his vehicle.

Martinez argues that Trooper Callister unreasonably prolonged the stop by asking questions unrelated to the traffic violation that precipitated the stop in the first place. But the Court has made clear that questions unrelated to the stop are not for that reason alone prohibited. *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). Martinez would have the court add up the seconds it took Trooper Callister

4

to ask Martinez questions unrelated to the traffic violation— "Francisco, you don't have anything illegal in your car?"; "No guns, drugs, bombs?"; "Do you have any large amounts of currency in your car?"; "Would it be okay if I did a search of your car?"; "Would it be okay if I have a dog run around the car?"—to support a finding that the stop was unreasonably extended. But "unreasonably prolonged" must mean more than a few seconds. The Court recognized in *Rodriguez* that its prior cases "concluded that the Fourth Amendment tolerated certain unrelated investigations that did not lengthen the roadside detention." 575 U.S. at 354. *Rodriguez* did not overrule those cases. Trooper Callister's questions fit well within this rule and did not unreasonably prolong the stop. To the extent they lengthened it at all, however, they were justified by the Trooper's reasonable suspicion.

As its text makes clear, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). In the context of this case, the question before the court is whether Trooper Callister unreasonably prolonged his stop of Martinez. I conclude he did not. That the initial stop was justified is without dispute. Martinez had obscured his view of the roadway. After the stop was made, this experienced State Trooper credibly described in detail the specific circumstances that led him to believe Martinez was involved in drug trafficking, including the fact Martinez appeared nervous, did not own the vehicle he was driving so far from home, the seeming inconsistencies in his statements about whose car it was and his unusual travel plans, the nervousness he exhibited, the amount of cash he was carrying, and the fact that he was traveling along a common drug courier route to a source area. Though none of these facts by themselves could give rise to a reasonable suspicion, that is not how a reviewing court is to assess a law enforcement officer's actions.

5

Courts are required to look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. This test allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002); *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Martinez challenges Trooper Callister's contention that he had reasonable suspicion that Martinez was involved in drug activity by noting none of the facts Trooper Callister relied upon were incriminating in themselves and pointing out innocent explanations for each. But that is not how the test is applied. "The totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (quoting *Arvizu*, 534 U.S. at 274). A court errs when if views "each fact in isolation, rather than as a factor in the totality of the circumstances" or if it "dismiss[es] outright any circumstances that [are] susceptible of innocent explanation." *Id.* (internal citations omitted). That is precisely what Martinez asks the court to do here.

Relying on *United States v. Rodriguez-Escalara*, 884 F.3d 661 (7th Cir. 2018), Martinez also argues that his consent to search was involuntary. But in *Rodriguez-Escalara*, the consent was given after the traffic stop had already been prolonged to more than 33 minutes to await the arrival of a drug detection dog and then after the dog had failed to indicate the presence of drugs. The court concluded that the drug evidence "was derived from the unlawful seizure." *Id.* at 672. Here, there was no unlawful seizure. The stop was not unreasonably prolonged. Martinez

6

consented within seconds of Trooper Callister completing the work required for the warning. Having been told he was under no obligation to do so, Martinez presumably decided to consent to the search to avoid suspicion that he had anything to hide and in the belief that Trooper Callister would not find anything incriminating in the vehicle he was driving. Having guessed wrong, he is not entitled to withdraw his consent after the fact. The motion to suppress evidence obtained in the Arizona stop is therefore denied.

### B. Wisconsin Stop

Martinez was again stopped for a traffic violation on May 24, 2019, this time by a Wisconsin State Trooper, in Fond du Lac County. Martinez at the time was under investigation by the Brown County Drug Task Force (BCDTF) as a member of a larger drug trafficking conspiracy centered on Ruben Ortiz and operating in the Green Bay area. Deputy Alexander Wysocki, on assignment to the BCDTF, testified that Martinez was seen with Ortiz and that confidential informants with whom he was working told him that Martinez was one of Ortiz's suppliers. Deputy Wysocki knew of the traffic stop in Arizona where more than $77,000 had been seized from a secret compartment in the vehicle Martinez was driving.

On May 9, 2019, Martinez's vehicle was seen at a house in Green Bay associated with Ortiz, which the BCDTF had determined was a "stash house" from information provided by confidential informants. Martinez had stayed at the house only a half hour before leaving, which Deputy Wysocki regarded as consistent with a drug transaction, given the fact that Martinez had traveled all the way from Illinois. Martinez's car, a Black Escalade, was seen at the same location on May 24, 2019, at approximately 5:15 p.m. Agents of the BCDTF surveilled the vehicle as it left Green Bay headed south. Believing that Martinez was likely carrying drugs but not wanting to disclose the ongoing investigation, Deputy Wysocki contacted the Wisconsin State Patrol and

7

arranged for one of their officers to conduct a traffic stop on the vehicle. He also alerted an officer with a drug detection dog of his plan so that when the vehicle was stopped, the officer would be able to have his dog check the vehicle without delay.

At approximately 7:15 p.m., State Trooper Matthew Ackley conducted the traffic stop on State Highway 26 north of Highway 151 for an illegal license plate bracket and failure of slower vehicle to keep right. Trooper Ackley testified that he had been following Martinez and conducted the stop after he observed him traveling in the passing lane at a lower rate of speed than the cars that were passing him. Trooper Ackley also observed that the rear license plate bracket on Martinez's car obstructed the name of the state that issued it and the registration decal. Both are violations of Wisconsin traffic laws. Within minutes of the stop, Fond du Lac County Sheriff Deputy Justin Weisbecker arrived with his trained drug detection dog Koda. As Trooper Ackley was issuing the warning to Martinez for the traffic violations, Deputy Weisbecker gave Koda the command to search. Koda alerted on both sides of the vehicle, thereby providing probable cause for a search. In the course of the search, officers did not find any contraband, but they did locate a hidden compartment where the spare tire would normally be located. The vehicle was then taken to the Fond du Lac County Sheriff's Department for further inspection.

There is no dispute that the stop of Martinez's vehicle was "pretextual," if by "pretextual" one means that the law enforcement officers had ulterior motives for pulling Martinez over. Deputy Weisbecker candidly testified that even though he believed Martinez was carrying drugs in his vehicle, he did not want to stop him for fear of revealing the ongoing investigation he and the BCDTF were conducting. He, or others from his unit, therefore contacted Trooper Ackley and Deputy Weisbecker and asked them to conduct a traffic stop under circumstances where a drug

detection dog could be used to establish probable cause to conduct a search. That is precisely what they did, and under the current state of the law, it is not unlawful.

The temporary detention of a motorist who the police have probable cause to believe has committed a civil traffic violation is consistent with the Fourth Amendment's prohibition against unreasonable seizures, regardless of whether a "reasonable officer" would have been motivated to stop the automobile by a desire to enforce the traffic laws. *Whren v. United States*, 517 U.S. 806, 812–14 (1996). In other words, the constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. *Id.* at 813. Moreover, "the use of a well-trained narcotics-detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view—during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (internal quotation marks and citations omitted). "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Id.* at 410. Thus, the sole question presented as to Martinez's motion challenging this stop is whether Trooper Ackley had, directly or indirectly, either a reasonable suspicion or probable cause to conduct the stop.

Here, Trooper Ackley had probable cause at the time he executed the stop to believe Martinez had violated a traffic law. Section 341.61(3) of the Wisconsin Statutes provides up to a $500 forfeiture for anyone who covers or obstructs any letter or figure on a registration plate, insert tag, decal or other evidence of registration. Trooper Ackley testified that the license plate bracket to Martinez's vehicle obstructed the state of issuance and the registration decal, and he proceeded to issue a written warning to him for the violation. Although Martinez disputes this violation, he did not testify or offer any evidence that would call Trooper Ackley's testimony into question.

9

I therefore conclude that Trooper Ackley did not violate Martinez's rights under the Fourth Amendment when he conducted the traffic stop on May 24, 2019. And because Deputy Weisbecker arrived almost simultaneously with his dog Koda, the stop was not prolonged to allow the dog sniff. When the trained drug detection dog alerted on the vehicle, there was probable cause to conduct the search. *Florida v. Harris*, 568 U.S. 237, 246–47 (2013). And under the automobile exception to the warrant requirement, no warrant was required. *Carroll v. United States*, 267 U.S. 132 (1925). The search was therefore lawful, and Martinez's motion to suppress is denied.

**SO ORDERED** at Green Bay, Wisconsin this __7th__ day of October, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge